**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Richie Pinkley,

    Plaintiff,

v.

Marty C. Anderson, Warden,

    Defendant.

Civil No. 06-cv-4157 (PAM/JJG)

**REPORT AND RECOMMENDATION**

This is a 42 U.S.C. § 1983 civil rights action brought by pro se Plaintiff Richie Pinkley ("Pinkley"). Pinkley asserts that Defendant Marty C. Anderson ("Anderson"), Warden of the Federal Medical Center ("FMC") located in Rochester, Minnesota, is unconstitutionally denying him a heart-lung transplant. This matter is before the Court on the parties' cross-motions for summary judgment (Doc. Nos. 19 and 26) and on Pinkley's motion for an injunction (Doc. No. 38). These motions have been referred to this Court pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons set forth below, this Court recommends that Anderson's motion for summary judgment be granted, and that Pinkley's motions for summary judgment and an injunction be denied.

**I.  BACKGROUND**

Pinkley is a 50 year old prisoner detained in the FMC in Rochester, Minnesota. Pinkley was convicted of various drug related charges, including the manufacture and distribution of methamphetamine, and sentenced to 156 months (13 years) with 5 years of supervised release. *Declaration of Angela Buege*, ¶ 3. Pinkley's prison term began on January 13, 2000. *Id.* His projected release date is May 11, 2011 based on good conduct time. *Id.* His current custody classification is community custody. *Affidavit*

*of Richie Pinkley (Nov. 9, 2006), Ex. G.*

Pinkley suffers from severe pulmonary hypertension. His doctor at the Mayo Clinic, Michael D. McGoon, M.D., recommended in July 2005 that Pinkley be evaluated for a heart-lung transplant at that time because "his disease is advanced, progressive, and will be fatal over a relatively short period of time." *Nov. 9, 2006 Pinkley Aff., Ex. A*. Dr. Trung M. Tran, Pinkley's doctor at the FMC agreed with Dr. McGoon's transplant recommendation, opining in October 2007 that, "The recommendations by Dr. McGoon, Mayo Cardiovascular Medicine, were well outlined and reported. The medication regime is used only temporarily until he has a transplantation. Otherwise, it is clear that he has a predictable shortened life expectancy. My opinion and recommendation remain the same, that is to have Mr. Pinkley pursue a heart and lung transplantation evaluation and treatment." *Affidavit of Richie Pinkley (Feb. 12, 2007), App. A*.

The federal Bureau of Prison's ("BOP") policy regarding transplants requires the prison at which a prisoner requesting a transplant is detained to prepare a packet regarding the transplant request which includes a medical summary, psychological and social work evaluations, and a case management report. *Affidavit of Michael B. Nelson, D.O.*, ¶ 4. This packet is forwarded to the BOP's Medical Director. *Id.* The Medical Director then assigns the transplant request to a Transplant Advisory Group. *Id.*, ¶ 5. This Group reviews the request and makes a transplant recommendation to the BOP's Medical Director. *Id.* If the Group recommends a transplant, the BOP contacts facilities that have conducted BOP transplants in the past to determine if they will review the inmate for a transplant. *Id*, ¶ 6.

In the fall 2005, Defendant Anderson initiated this transplant review procedure for Pinkley. *Id.*, ¶ 7. The Transplant Advisory Group met on January 12, 2006, and recommended that the BOP contact

facilities that had previously done transplants for federal prisoners to determine if they would review Pinkley's case. *Id*. ¶ 8. The BOP subsequently contacted four such facilities. *Id.*, ¶ 8. None of them were willing to pursue Pinkley's transplant. *Id.*, ¶¶ 8-9.[1]

In May 2007, Pinkley requested that the FMC update its search for a facility to perform a transplant. *Affidavit of Richie Pinkley (June 18, 2007)*, ¶ 2. The BOP did so, but informed Pinkley that it remained unsuccessful. *Id.*, ¶ 3.

Pinkley now wants to attempt to make his own arrangements for a transplant. He seeks a transfer to a Nashville, Tennessee halfway house near Vanderbilt University, which he states performs heart-lung transplants. *Id*., ¶ 4. He states that his family's research indicates that he must reside near Vanderbilt to so that he can undergo pre-surgical monitoring prior to any transplant. *Id.* The Defendant opposes such a transfer, maintaining that Pinkley must be detained at a FMC due to his medical needs. *Nelson Aff.*, ¶ 10.

Pinkley has a related lawsuit pending in the United States District Court for the Western District of Tennessee, Case No. 06-cv-1220. In the Tennessee suit, Pinkley seeks to force the BOP to request a compassionate release for medical reasons from his sentencing court pursuant to 18 U.S.C. § 3582(c)(1)(A). The Tennessee case was originally filed in this District, but was transferred to the Western District of Tennessee by Order dated September 16, 2006, based on a lack of jurisdiction to modify

---

[1] The BOP contacted the Mayo Clinic, the University of Minnesota, the University of Kentucky, and the University of Massachusetts. The Mayo Clinic and the University of Minnesota categorically declined to offer transplant services to inmates, and, therefore, did not review Pinkley's packet. The University of Kentucky, which performs bone marrow transplants for the BOP, reviewed Pinkley's packet, but declined to pursue transplantation. The University of Massachusetts does not have a heart-lung transplant program and, therefore, did not review Pinkley's packet. *Nelson Aff.*, ¶¶ 8-9.

Pinkley's sentence. *Pinkley v. Anderson*, Civil. No. 06-2461 (PAM/JJG), Memorandum and Order (Sep. 16, 2006) (adopting Report and Recommendation) (holding that sentencing court must modify sentence). The Western District of Tennessee has not issued an order in that case.

## II. ANALYSIS

The issue before the Court is whether Anderson is unconstitutionally denying Pinkley medical care by refusing to transfer him from the FMC in Rochester to a Nashville, Tennessee halfway house close to Vanderbilt University Medical Center, which Pinkley asserts performs heart-lung transplants. Both parties seek summary judgment regarding this issue. Pinkley also seeks an injunction forcing Anderson to transfer him.[2]

### B. Cross-Motions for Summary Judgment

#### 1. Summary Judgment Standard

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. *See Celotex*, 477 U.S. at 322; *Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 224 F.3d 735, 738 (8th Cir. 2000). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence

---

[2] Pinkley has withdrawn his contention that the BOP failed to appropriately seek a transplant on his behalf, acknowledging that its efforts in this regard have been exhausted. *Pinkley's Motion for Injunctive Relief*, p. 3. His sole contention, therefore, is that he must be allowed to seek a transplant on his own behalf through a transfer to the Tennessee halfway house.

that specific facts exist creating a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995). The Court views the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. *See Graves v. Ark. Dep't of Fin. and Admin.*, 229 F.3d 721, 723 (8th Cir. 2000); *Calvit v. Minneapolis Pub. Schs.*, 122 F.3d 1112, 1116 (8th Cir. 1997).

### 2. Deprivation of Medical Care

The Eighth Amendment to the United States Constitution prohibits "[d]eliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (stating that *Estelle*'s deliberate indifference standard "has long been established"). A plaintiff alleging deprivation of medical care must show that he has an objectively serious medical need and that the defendant knew of and disregarded that need. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (citations omitted).

There appears to be no real dispute that Pinkley has an objectively serious medical need or that Anderson knew of that need. A serious medical need includes one that "has been diagnosed by a physician as requiring treatment...." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). Both Drs. Tran and McGoon diagnosed Pinkley with severe pulmonary hypertension and recommended a heart-lung transplant. Anderson signed the letter forwarding Pinkley's transplant packet to the BOP's medical director in the fall of 2005, *Nelson Aff.*, ¶ 7, evidencing his knowledge of Pinkley's condition and transplant request.[3]

---

[3] Anderson relies on the Affidavit of Michael B. Nelson, D.O., a BOP Medical Director, to argue that keeping Pinkley at FMC Rochester is a valid course of treatment. It is notable that Nelson is a BOP administrator, not one of Pinkley's treating physicians. *See Jorden v. Farrier*, 788 F.2d 1347, 1349 (8th Cir. 1986). More importantly, Nelson, himself was part of the BOP Transplant Advisory Group that

5

The crux of this dispute is whether Defendant Anderson has disregarded Pinkley's serious medical need. Pinkley asserts that such disregard is demonstrated by Anderson's refusal to transfer him to a Nashville, Tennessee halfway house located nearby Vanderbilt University Medical Center, which Pinkley asserts performs heart-lung transplants. Pinkley argues that if Anderson approved this transfer he would be closer to Vanderbilt, meeting its requirement that he be nearby for medical monitoring prior to any transplant surgery. *June 18, 2007 Pinkley Aff.*, ¶ 4. Anderson responds that it has complete discretion over whether to transfer Pinkley, that it has done all it can to arrange a transplant for him, and that "[d]ue to his complicated medication regime, and the need for regular follow-up care by specialists such as those at the Mayo Clinic, he must remain at one of the FMCs." *Nelson Aff.*, ¶ 10.

Prison authorities have broad discretion in administering their institutions, and such discretion generally extends to a prisoner's transfer. *See Sanders v. St. Louis County*, 724 F.2d 665, 668 (8th Cir. 1983) (citing *Olim v. Wakinekona*, 461 U.S. 238, 246 (1983)). *See also Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006) (stating that 18 U.S.C. § 3621(b) "provides the BOP with broad discretion to choose the location of an inmate's imprisonment"). Although this discretion is not absolute, *e.g., Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999), *Fults*, 442 F.3d at 1092 (striking BOP regulation categorically limiting transfers of certain prisoners to halfway houses), here Pinkley has not raised a material fact issue that it has been unconstitutionally exercised.

Pinkley argues that the FMC's refusal to transfer him to a facility closer to Vanderbilt violates the Eighth Amendment because it deprives him of a heart-lung transplant prescribed by his doctors. In short,

---

recommended a transplant for Pinkley. The BOP then tried unsuccessfully to find a transplant for Pinkley, belying any current assertion on its part that a transplant is no longer needed.

he contends that no transfer means no transplant.  The record, however, evidences nothing more than Pinkley's bare hope that a transfer will result in a transplant.  Pinkley merely states that if he is transferred Vanderbilt could provide him with pre-surgical monitoring.  *June 18, 2007 Pinkley Aff.*, ¶ 4.  Pinkley's affidavit does not state that he would actually receive the needed transplant if transferred, that he would be placed on a waiting list if transferred, or any other information indicating that a transfer would materially advance his search for a transplant.  Pinkley therefore, has not set forth specific facts demonstrating a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e); *Barron v. Keohane*, 216 F.3d 692, 693 (8th Cir. 2000) (affirming denial of habeas petition where prisoner failed to sufficiently evidence his need for a transplant); *Morgan v. Rabun*, 128 F.3d 694, 699 (8th Cir.), *reh'g denied* (Dec. 18, 1997), *cert. denied*, 523 U.S. 1124 (1998) (finding bare assertions of prisoner mistreatment insufficient to avoid summary judgment in § 1983 case).  Accordingly, the Court concludes that the record does not show Anderson's deliberate disregard of Pinkley's serious medical need.

The Court is not unsympathetic to Pinkley's plight and is mindful of the serious Constitutional and medical considerations at issue.   It cannot, however, garner evidence on Pinkley's behalf where none exists.

In sum, even viewing the facts in a light most favorable to Pinkley, insufficient evidence in the record exists justifying the transfer he requests.  Because Pinkley has not shown that the transfer he seeks will lead to, or even advance, the transplant he needs, no genuine issue of material fact exist that Anderson has deliberately disregarded Pinkley's medical need.  Accordingly, the Court recommends that Anderson's motion for summary judgment be granted and that Pinkley's motion for summary judgment be denied.

### C.     Pinkley's Motion for an Injunction

Pinkley also brings a parallel request for an injunction ordering Anderson to transfer him to the Nashville, Tennessee halfway house for the same reasons he advanced in support of his summary judgment motion. Pinkley's request for injunctive relief, if granted, would provide him with substantially all the relief he seeks in this case. In such circumstances, the movant's burden of showing that the preliminary injunction factors weigh in his favor is a "heavy one." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir.1993); *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir.1987) ("[t]he burden on a movant to demonstrate that a preliminary injunction is warranted is heavier when, as here, granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits"). Pinkley cannot meet this heavy burden.

Where a plaintiff's claim has no likelihood of success on the merits, a court cannot grant an injunction. *Newton County Wildlife Ass'n v. U.S. Forest Serv.*, 113 F.3d 110, 113 (8th Cir. 1997), *cert. denied,* 522 U.S. 1108 (1998). As discussed above in the Court's analysis of Pinkley's summary judgment motion, his claim cannot succeed on its merits. His request for injunctive relief is, therefore, appropriately denied.[4]

### III.    CONCLUSION

The Court finds no genuine issue of material fact that Anderson deliberately disregarded Pinkley's serious medical need. The Court, therefore, recommends that Anderson's motion for summary judgment be granted and that Pinkley's motions for summary judgment and for an injunction be denied.

---

[4]Based on the Court's recommended disposition of this case, the Court denies as moot Pinkley's recent motion for appointment of counsel.

**IV.  RECOMMENDATION**

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

A. Defendant Marty C. Anderson's Motion for Summary Judgment (Doc. No. 19) be GRANTED.

B. Plaintiff Richie Pinkley's Motion for Summary Judgment (Doc. No. 26) be DENIED.

C. Plaintiff Richie Pinkley's Motion for an Injunction (Doc. No. 38) be DENIED.

D. Plaintiff Richie Pinkley's Motion to Appoint Counsel (Doc. No. 35) be DENIED.

E. This case be DISMISSED WITH PREJUDICE.

Dated this 3rd day of August, 2007.                    s/Jeanne J. Graham

                                                                                JEANNE J. GRAHAM
                                                                                United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by August 22, 2007. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.